<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

MITCHELL ROBERTSON,       :
                            :    Civil Action No. 06-4831 (NLH)
        Petitioner,   :
                            :
        v.             :    **OPINION**
                            :
CHARLES SAMUELS,        :
                            :
        Respondent.   :

**APPEARANCES:**

    MITCHELL ROBERTSON, Petitioner <u>pro se</u>
    #53206-066
    F.C.I. Fort Dix
    P.O. Box 2000
    Fort Dix, New Jersey  08640

    CHRISTOPHER J. CHRISTIE, United States Attorney
    DOROTHY J. DONNELLY, Assistant U.S. Attorney
    402 East State Street, Room 430
    Trenton, New Jersey  08608
    Attorneys for Respondent

**HILLMAN**, District Judge

      Petitioner Mitchell Robertson ("Robertson"), a federal prisoner currently confined at the Federal Correctional Institution in Fort Dix, New Jersey, ("FCI Fort Dix"), has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  The named respondent is the Warden at FCI Fort Dix, Charles Samuels.

I.   BACKGROUND

Petitioner Robertson was sentenced on April 20, 2000, in the United States District Court for the Eastern District of Pennsylvania, to a 66-month prison term based on his conviction for violations of 18 U.S.C. § 922(G)(1)(felon in possession of ammunition in a firearm).  Robertson was released on supervision on April 13, 2004, but was returned to prison as a supervised release violator.[1]  Currently, Robertson's projected release date is November 2, 2007, assuming he retains all available good time credits.  His full term date is February 4, 2008.  (Respondent's Answer and Declaration of Nicole M. Ahmed, Exhibit 1a).

Robertson brings this habeas petition challenging the respondent's determination that petitioner receive only two months in a halfway house or Community Corrections Center ("CCC") before his projected release date.  He argues that he is entitled to a full six months of CCC placement under 18 U.S.C. § 3624(c).

Respondent answered the petition on November 29, 2006, asserting that Robertson failed to exhaust his administrative remedies.[2]  Respondent also contends that Robertson is still

---

[1]  Robertson states that he was sentenced on December 12, 2005 to a prison term of 24 months for his supervised release violation.  He self-surrendered to the FCI Fort Dix officials on February 9, 2006.

[2]  In his petition, Robertson argues that exhaustion of administrative remedies in this instance would be futile. (Petition at pg. 2).

being evaluated for a CCC transfer and that no decision has been made as to the length of his placement in a Residential Reentry Center ("RRC").[3]  Consequently, respondent argues that the matter is not ripe for review and the petition should be dismissed.  The Court notes, from the administrative record provided by respondent, that a pre-release preparation date of September 1, 2007 was listed on Robertson's Public Information Inmate Data Form as of November 14, 2006.

Respondent further argues that Robertson never made a request for transfer or special CCC placement to prison officials, and therefore, has not attempted to exhaust his administrative remedies before bringing this action.  Therefore, respondent asserts that the petition should be denied without prejudice.

On February 19, 2007, Robertson wrote to the Court in reply to respondent's answer.  First, Robertson alleges that his two month placement in a RRC was automatically computed the very day he turned himself in to the Federal Bureau of Prisons ("FBOP"), which is a strict 10% percentage of CCC placement time based on his 24-month prison term.  Robertson argues that this determination by respondent demonstrates that he was never evaluated in accordance with Woodall v. Federal Bureau of

---

[3]  Respondent notes that halfway houses for federal inmates, which were formally referred to as Community Corrections Centers ("CCC"), are now referred to as RRCs.

<u>Prisons</u>, 432 F.3d 235 (3d Cir. 2005).  He also contends that he has attempted to exhaust his administrative remedies to no avail.  More specifically, he asserts that his case manager, Mr. Langehennig, has ignored Robertson's informal efforts for review of his CCC placement, and is otherwise harassing and retaliating against petitioner for asking for additional CCC placement time.[4]

On or about March 23, 2007, Robertson submitted a more formal reply to respondent's answer.  He again asserts that it is futile to exhaust administrative remedies with his Case Manager William Langehennig.  Robertson also disputes some of respondent's allegations.

First, Robertson states that he is not assigned to a camp facility as noted by respondent on page 9 of the answer.  Second, Robertson contends that his petition is ripe for review because his administrative remedy forms have placed the matter in controversy.  He has tried to resolve the RRC placement issue as early as June 12, 2006 through verbal and written administrative

---

[4]  Specifically, Robertson claims that he and his visitors are being harassed during visitation for touching and comforting each other.  Robertson claims that other inmates have behaved similarly with their visitors but are not being treated the same. Robertson attaches copies of administrative remedy forms submitted in this regard.  Also, on or about April 20, 2006, Langehennig allegedly threatened petitioner not to go over his head or petitioner would suffer the consequences of being put on a "sh*t list." We note, but render no judgment on, the validity of these claims except to note, as we do later, that it appears petitioner has made some effort to seek administrative review and relief.

grievances.  Moreover, Program Statement 7310.04, governing "Community Corrections Center (CCC) Utilization and Transfer Procedures", renders petitioner's case due for RRC placement review.

Robertson admits that he filed his petition 13 months before his projected release date, and that he did have a team meeting in November 2006, albeit it was "rushed" and "unprepared". However, since November 2006, there have been no release preparation needs, programs, or plans being identified or recommended for his pre-release preparation.  There are only seven months remaining before Robertson's projected release date, and his earliest RRC placement date (assuming he would receive six months RRC placement) would commence in four weeks.

Next, Robertson contends that he has attempted administrative review of his request for more time on his RRC placement, but he has not received any response to his written requests, dated August 10, 2006 (3 forms), February 19, 2007, and February 22, 2007 (2 forms).

Finally, Robertson attaches a copy of a detainer action letter lodged against him by the Commonwealth of Pennsylvania. The detainer letter is dated February 28, 2007.  On March 19, 2007, Robertson filed an informal BP-9 administrative remedy form, seeking to have the detainer dropped because there was not a certified copy of a warrant, writ or court order submitted.

The FBOP responded to petitioner's BP-9 form, informing Robertson

that he would have to contact the agency which lodged the

detainer against him, and providing Robertson with paperwork

containing the agency's contact information.

## II.   RELEVANT STATUTES AND REGULATIONS

Federal law imposes upon the FBOP the obligation and

discretion to designate the place of a prisoner's imprisonment,

as follows:

> (b) Place of imprisonment.--The Bureau of Prisons shall
> designate the place of the prisoners's imprisonment.
> The Bureau may designate any available penal or
> correctional facility that meets minimum standards of
> health and habitability established by the Bureau,
> whether maintained by the Federal Government or
> otherwise and whether within or without the judicial
> district in which the person was convicted, that the
> Bureau determines to be appropriate and suitable,
> considering -
>
>> (1) the resources of the facility contemplated;
>> (2) the nature and circumstances of the offense;
>> (3) the history and characteristics of the prisoner;
>> (4) any statement by the court that imposed the
> sentence--
>>> (A) concerning the purposes for which the
> sentence to imprisonment was determined to be
> warranted; or
>>> (B) recommending a type of penal or
> correctional facility as appropriate; and
>> (5) any pertinent policy statement issued by the
> Sentencing Commission pursuant to section 994(a)(2) of
> Title 28.
>
> In designating the place of imprisonment or making transfers
> under this subsection, there shall be no favoritism given to
> prisoners of high social or economic status.  The Bureau may
> at any time, having regard for the same matters, direct the
> transfer of a prisoner from one penal or correctional
> facility to another.

6

18 U.S.C. § 3621(b).

In addition, federal law provides that prisoners shall, to the extent practicable, serve the last portion of their imprisonment under conditions that will facilitate their transition from prison life to the community.

> (c) Pre-release custody.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. ...

18 U.S.C. § 3624(c).

Recently, in Woodall, the Third Circuit Court of Appeals considered and rejected the validity of FBOP regulations that became effective on February 14, 2005, which regulations restricted an inmate's CCC transitional placement to the last 10% of the inmate's sentence. Instead, the Third Circuit held that both initial placement decisions and pre-release transfer decisions must be individualized determinations based upon the factors enumerated in § 3621(b).

> In sum, individual determinations are required by § 3621(b). ... While the BOP may exercise considerable discretion, it must do so using the factors the Congress has specifically enumerated.
>
> ...
>
> The dissent argues that the § 3621(b) factors need not be considered by the BOP until an inmate transfer is "actually considered." We disagree. ...

7

> ...   The statute as a whole, if it is to have
> practical effect, indicates that the factors enumerated
> must be considered in making determinations regarding
> where to initially place an inmate, as well as whether
> or not to transfer him.   ...   The congressional intent
> here is clear:   determinations regarding the placement
> scheme-including where a prisoner is held, and when
> transfer is appropriate-must take into consideration
> individualized circumstances.   ...
>
> ...
>
>         In short, we conclude that the § 3621(b) factors
> apply to BOP determinations regarding whether or not
> initial placements or transfers are appropriate.   We
> thus do  not find that the factors are limited by the
> temporal references in § 3624.

Woodall, 432 F.3d at 247, 249-50.

Thus, a prisoner is entitled to an individualized

determination as to his pre-release placement based upon the

factors identified in § 3621(b).   However, as noted by the Third

Circuit, the fact that the FBOP may assign a prisoner to a CCC or

RRC does not mean that it must.

### III.   ANALYSIS

#### A.   Standard of Review

Robertson seeks a writ of habeas corpus pursuant to 28

U.S.C. § 2241(c)(3).   That section states that the writ will not

be extended to a prisoner unless "he is in custody in violation

of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than

more formal pleadings drafted by lawyers.   See Estelle v. Gamble,

429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520

(1972).  A pro se habeas petition and any supporting submissions

must be construed liberally and with a measure of tolerance.  See

Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v.

Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United

States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert.

denied, 399 U.S. 912 (1970).

B.   Exhaustion of Administrative Remedies

     Although 28 U.S.C. § 2241 contains no statutory exhaustion

requirement, a federal prisoner ordinarily may not bring a

petition for writ of habeas corpus under 28 U.S.C. § 2241,

challenging the execution of his sentence, until he has exhausted

all available administrative remedies.[5]  See, e.g., Callwood v.

Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States

Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v.

---

[5]  To exhaust administrative remedies before the Federal
Bureau of Prisons, a federal inmate seeking review of an aspect
of his confinement must first seek to resolve the dispute
informally.  See 28 C.F.R. § 542.13.  If the inmate does not
receive a favorable termination, he may submit a formal written
Administrative Remedy Request for response by the warden of the
facility.  See 28 C.F.R. § 542.14.  If the inmate is not
satisfied with the warden's response, he may appeal the warden's
decision to the Regional Director within 20 days of the date of
the decision.  If he is not satisfied with the Regional
Director's response, he may submit an appeal of the Regional
Director's decision to the Central Office within 30 days of the
date of the decision.  See C.F.R. § 542.15.  If these responses
are not received by the inmate within the time allotted for
reply, "the inmate may consider the absence of a response to be a
denial at that level."  28 C.F.R. § 542.18.

Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion

doctrine promotes a number of goals:

>     (1) allowing the appropriate agency to develop a
>     factual record and apply its expertise facilitates
>     judicial review; (2) permitting agencies to grant the
>     relief requested conserves judicial resources; and (3)
>     providing agencies the opportunity to correct their own
>     errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd,

248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau

of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless,

exhaustion of administrative remedies is not required where

exhaustion would not promote these goals.  See, e.g., Gambino v.

Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required

where petitioner demonstrates futility); Lyons v. U.S. Marshals,

840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where

it "would be futile, if the actions of the agency clearly and

unambiguously violate statutory or constitutional rights, or if

the administrative procedure is clearly shown to be inadequate to

prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959,

*2 (E.D. Pa. 2000) (exhaustion not required where delay would

subject petitioner to "irreparable injury").

In Snisky v. Pugh, the petitioner did not deny his failure

to exhaust; however, the Court excused exhaustion because the

petitioner was scheduled to be released, and his claim was

clearly without merit.  See 974 F. Supp. 817, 819 (M.D. Pa.

1997), rev'd on other grounds, 159 F.3d 1353 (3d Cir. 1998).  The

court recognized that exhaustion could be excused where it would be futile.  See id.  In Snisky, the court found that the FBOP "unequivocally" would deny the petitioner's relief, and he would return to the district court after the denial.  Thus, the court addressed the claims on the merits.

Likewise, in Ferrante v. Bureau of Prisons, the court found that if the petitioner's claim were meritorious, he would be released to a halfway house relatively soon; therefore, dismissing the petition for lack of exhaustion would be futile. See 990 F. Supp. 367, 370 (D.N.J. 1998)(citing Snisky, 974 F. Supp. at 819-20).  Further, the court held that the petitioner's claim was clearly without merit, so that the exhaustion issue need not be reached.  See id.  See also Fraley v. Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993)(stating that exhaustion was not required because it was futile, as Regional Director would "almost certainly" have denied request, and term of imprisonment was completed).

Here, although respondent alleges that petitioner did not exhaust his administrative remedies, it does appear that Robertson did attempt to resolve his request for more RRC placement time via informal and written administrative remedy procedures, to no avail.  Moreover, Robertson argues that any further resort to administrative remedies would now be futile.

The goals of administrative review are especially pertinent under the circumstances of this case.  Namely, facilitating judicial review and conserving judicial resources by allowing the FBOP the opportunity to develop a factual record and apply its expertise in decisions respecting a federal inmate's placement and/or transfer during his term of incarceration; permitting the FBOP the opportunity to grant more RRC placement time if it deems such relief appropriate; and providing the FBOP the opportunity to correct any error thereby fostering administrative autonomy.

Here, however, Robertson plainly took some steps in the administrative review process, but there does not appear to be any response from the FBOP, either to review the request for more RRC time or to deny it.  The Court also finds that any further effort by Robertson in exhausting his administrative remedies at this point would likely be futile since his projected release date is fast approaching.

Therefore, the Court will review the merits of Robertson's petition rather than dismiss it on this procedural ground.

C.  Ripeness Doctrine

Ripeness, like other justiciability doctrines, ultimately derives from Article III's requirement that federal courts may decide only cases and controversies.  See Nextel Communications of the Mid-Atlantic, Inc. V.  City of Margate, 305 F.3d 188, 192 (3d Cir. 2002).  Considerations of ripeness are sufficiently

important that courts are required to raise the issue <u>sua</u> <u>sponte</u>,
even when the parties do not question jurisdiction.  <u>Nextel</u>
<u>Communications of th Mid-Atlantic, Inc.</u>, 305 F.3d at 192.

"The function of the ripeness doctrine is to determine
whether a party has brought an action prematurely, and counsels
abstention until such time as a dispute is sufficiently concrete
to satisfy the constitutional and prudential requirements of the
doctrine."  <u>Peachlum v. City of York, Pennsylvania</u>, 333 F.3d 429,
433 (3d Cir. 2003)(citations omitted).  "The ripeness doctrine
prevents judicial interference until an administrative decision
has been formalized and its effects felt in a concrete way by the
challenging parties."  <u>Lauderbaugh v. Hopewell Twp.</u>, 319 F.3d
568, 575 (3d Cir. 2003).

The Supreme Court has stated that to meet the ripeness
standard, plaintiffs must show either a specific present
objective harm or the threat of specific future harm.  <u>Laird v.</u>
<u>Tatum</u>, 408 U.S. 1, 14 (1972).  "A claim is not ripe for
adjudication if it rests upon contingent future events that may
not occur as anticipated, or indeed may not occur at all."  <u>Texas</u>
<u>v. United State</u>, 523 U.S. 296, 300 (1998)(internal citations
omitted).  In other words, the plaintiff must allege that he has
suffered an 'injury in fact' - an invasion of a legally protected
interest which is (a) concrete and particularized and (b) actual
or imminent, not conjectural or hypothetical."  <u>Lujan v.</u>

13

<u>Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)(internal

citations omitted).

Here, respondent principally asserts that this matter is not

ripe for review because there has been no determination or

evaluation with respect to the amount of time Robertson will

spend in an RRC for his pre-release preparation.  Respondent

states that after the FBOP makes an initial placement

determination, it conducts periodic reviews in accordance with

Program Statement ("PS") 7310.04 (dated December 16, 1998),

entitled "Community Corrections Center (CCC) Utilization and

Transfer Procedure."  This statement reads:

> RELEASE PLAN.  Staff shall begin release planning at an
> inmate's first team meeting, normally the initial
> classification, and shall continue throughout the inmate's
> confinement.  The following guidelines apply:
> a.  Planning early in an inmate's period of confinement is
> necessary to ensure release preparation needs are identified
> and appropriate release preparation programs are
> recommended.
> b.  Preliminary decisions regarding eligibility for CCC
> Programs are to be made well in advance of the last year of
> confinement.
> c.  A final and specific release preparation plan, including
> a decision as to CCC referral, is normally established at a
> team meeting no later than 11 to 13 months before an
> inmate's projected release date.

Program Statement 7310.04.

Respondent states that a program review for petitioner was

held in November 2006, but no final decision was made on the

amount of time Robertson will spend in pre-release custody under

§ 3624(c).  This Court notes, however, that a pre-release

14

preparation date of September 1, 2007 is reflected on
petitioner's November 14, 2006 Inmate Data Form, provided by
respondent with its answer.

Furthermore, Robertson states in his March 23, 2007 reply to
respondent's answer that he has not had any periodic reviews
since the November 2006 team meeting regarding his CCC placement
date.  It is now long after the "typical" 11 to 13 month review
prior to the petitioner's projected release date of November 4,
2007.  Thus, the Court is constrained to conclude that the pre-
release preparation date of September 1, 2007 listed on the
Inmate Data Form of November 14, 2006, is consistent with a
determination by the FBOP of Robertson's eligibility and date for
CCC or RRC placement.  Accordingly, it appears that a CCC
placement determination had already been made pursuant to a
strict 10% limitation, and that petitioner was not afforded an
individualized determination as required by Woodall.

Therefore, the Court rejects respondents' contention that
this matter is not ripe for consideration.

D.  Petitioner Was Not Afforded an Individualized Determination

Based on the facts as alleged and on the administrative
record provided, it would appear that Robertson is entitled to a
limited grant of his writ for habeas relief.  It is clear that
Robertson has not received an individualized determination as to

15

his pre-release placement based upon the factors identified in § 3621(b).  See Woodall, 432 F.3d at 247, 249-50.

Robertson may not be entitled to the full six months RRC placement as he seeks in his petition, and there is a question as to whether he is eligible for pre-release preparation placement in a RRC or CCC given the detainer recently lodged against him. However, at the very least, he is entitled to an individualized determination of his eligibility and period of RRC placement based upon the factors identified in § 3621(b).  Therefore, the Court will grant the writ to the extent that respondent will be required to consider, in good faith and in an expedited time frame, Robertson's eligibility for assignment to a CCC or RRC for transitional placement before his projected release date of November 4, 2007.

### III.   CONCLUSION

For the reasons set forth above, the writ will be granted in part, directing that respondent shall make an individualized determination as to Robertson's pre-release placement, in good faith, and in accordance with the factors identified in § 3621(b).  An appropriate order follows.

                                        s/Noel L. Hillman
                                        NOEL L. HILLMAN
                                        United States District Judge

Dated: April 5, 2007
At Camden, New Jersey

16